[Civ. No. 1081. Fourth Appellate District.—September 8, 1933.]

LUMBERMEN'S MUTUAL CASUALTY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, L. V. WILSON et al., Respondents.

Willis I. Morrison for Petitioner.

A. I. Townsend and A. B. Harris for Respondents.

MARKS, Acting P. J.—On the evening of September 13, 1932, L. V. Wilson was hired as an orange picker by the Garden Grove Mutual Orange Association. His hours of employment were to be from 7 o'clock in the morning to 4:30 o'clock in the afternoon of each day, with one-half hour off for lunch. His compensation was to be five cents for each box of oranges picked. His employment was to commence on September 14, 1932. On the morning of that day he called at the residence of the field foreman of the Garden Grove Mutual Orange Association and learned the location of the orchard in which he was to pick and was given a time-book to deliver to the picking boss. He reached the orchard at about five minutes before 7. A public road bounded the orchard on the south. Wilson parked his car on the south side of the road, crossed it, laid his picking sack on the ground, and gave the time-book to the picking boss who assigned him a ladder which he laid on his picking sack. The picking boss told him that as there were no picking boxes delivered at the orchard he would have to await their arrival before commencing work. Wilson crossed to the

south side of the road and joined in conversation with about ten other pickers who were standing just inside its south edge. While Wilson was thus engaged, and after 7 o'clock and before the boxes arrived, another orange picker drove up and struck him with his automobile, breaking one of his legs.

Upon this undisputed evidence the Industrial Accident Commission made Wilson an award against petitioner, which was the insurance carrier for the Garden Grove Mutual Orange Association. A petition for rehearing was denied and this award is before us for review.

Section 21 of article XX of the Constitution authorizes the legislature to create a system of compensation for workmen injured "in the course of their employment". Under this grant of power the legislature adopted the Workmen's Compensation, Insurance and Safety Act of 1917. Section 6 of this act as amended (Stats. 1929, p. 430) limits the liability of the employer to injuries "arising out of and in the course of the employment. . . . Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment."

It is well established that there must be some causal connection between the injury and the employment so that the injury may be found to have resulted from some risk of the employment. In *California Casualty Indemnity Exch. v. Industrial Acc. Com.*, 190 Cal. 433, 435 [213 Pac. 257], it was said:

"To entitle the representative of the deceased to recover in this case it must be shown that the employee, at the time of the injury, was not only 'performing service growing out of and incidental to his employment, and acting within the course of his employment', but also that the injury was proximately caused by such employment. In the very broadest sense, of course, it is true that the injury to the decedent grew out of and was incidental to his employment, since it was necessary that he should return from the place where he lunched to the truck. The right to an award is not alone founded upon the fact that such is the case, but upon the fact that the *service* the employee is rendering at the time of the injury grows out of and is incidental to the employment. For instance, it is the rule

that an employee going to and from his place of employment is not rendering any service, and begins to render such service only when he arrives at the place of his employment, and proceeds to use some instrumentality provided, by means of which he immediately places himself in a position to perform his task. (*Ocean Acc. etc. Co.* v. *Industrial Acc. Com.*, 173 Cal. 313, 322 [159 Pac. 1041, L. R. A. 1917B, 336].) It was not intended by the Compensation Act that the employer who comes within its provisions shall be the insurer of his employee at all times during the period of his employment. The employer is liable for compensation only when an injury occurs to the employee while performing some act for the employer in the course of his employment, or incidental to it. (*Fairbank Co.* v. *Industrial Com.*, 285 Ill. 11, 13 [120 N. E. 457].) There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury. There must be some causal connection between the employment and the injury in the sense that, by reason of the employment, there was an unusual or additional exposure of the injured party to the kind or character of hazard and danger (in this case an ordinary street risk) which caused the injury. The injury must have its origin in a risk connected with the employment, and must have flowed from that source as a rational and natural course. (*In re Betts,* 66 Ind. App. 484 [118 N. E. 551].) In that case, the employee, a furnace repairman, was returning from lunch to the place where he was working. He was riding with his employer. He said: 'I want to get off and get some tobacco.' As the driver stopped the horse, Betts stepped from the wagon into the street to go across to a store. He had taken but two or three steps when he was struck by an automobile and killed. His heirs were awarded compensation against the employer. In reversing the award the court said (66 Ind. App. 487, 118 N. E. 552) : 'We understand that all of these cases recognize and in effect hold that: "It is not enough for the applicant to say, 'The accident would not have happened if I had not been engaged in that employment, or if I had not been at that particular place.' He must go further and must say, 'The accident arose because of something I was doing in the course

of my employment, or because I was exposed by the nature of my employment to some particular danger.' '' ' ''

In the instant case Wilson was required to report for duty at 7 o'clock, which he did. He could not start the active duties of his employment because of the failure of his employer to have picking boxes ready for use by the workmen. He was told to wait, and from 7 o'clock in the morning it must be considered that he was under the control of his employer while he remained at or near the place of employment.

The question remains: Was there any causal connection between the employment and the injury, or, in other words, did the injury result from a risk of the employment?

It must be conceded that Wilson was required to remain near the grove in which he was to pick while waiting for the boxes. He was not required to go into the street, nor did any of his duties require him to loiter in the highway in which he was injured. Nevertheless, he chose this road as his waiting place and was injured by an automobile being driven along this street. We have concluded that the injury must be attributed to a ''risk of the street'' and not to a risk of employment.

In *Frigidaire Corp.* v. *Industrial Acc. Com.*, 103 Cal. App. 27, 31 [283 Pac. 974, 975], it was said: ''The theory upon which compensation is awarded in the class of accidents above mentioned is that the causal connection between the employment and the injury, which is essential to make it compensable, consists in the fact that the employment requires the presence of the employee upon the street and the fact that the injury was caused by some human or mechanical instrumentality incidental to the use of the street. In other words, as said in *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 36 Cal. App. 280 [171 Pac. 1088, 1089], with respect to the facts of that case. 'The causative danger was peculiar to the work in that had he [the employee] not been upon the street in the course of his duty he would not have been injured.' And as held in *Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 Pac. 744], the fact that the injuries to the employee are not of a kind to be anticipated nor peculiar to the employment in which he is engaged does not defeat the claim to compensation. (To the same effect is *General Accident, Fire & Life Assur. Corp.* v.

*Industrial Acc. Com.,* 186 Cal. 653 [200 Pac. 419].) And under the modern rule now followed in England and all American jurisdictions except Massachusetts (see note II [d] 51 A. L. R. 514), the situation is not altered by the fact that the risk is one to which everyone else upon the street is also exposed (*Globe Indemnity Co.* v. *Industrial Acc. Com., supra*), the vital question in such cases being 'whether the employment exposed the workman to the risk by sending him on the street, common though such risks were to all on the street.' " (*Katz* v. *A. Kadans & Co.,* 232 N. Y. 420 [134 N. E. 330, 23 A. L. R. 401].)

The case of *Balboa Amusement Producing Co.* v. *Industrial Acc. Com.,* 35 Cal. App. 793 [171 Pac. 108, 109], presents facts very similar to those of the instant case. An employee, while required to wait at his employer's place of business, entered a public street, where he stopped to talk to friends. While engaged in this conversation he was struck by an automobile and injured. In annulling an award in his favor the court said: "Even if it were conceded that injuries suffered by Stanley would have been compensable if they had resulted from an accident happening to him while actually traversing the street on the way from changing his coat, for his own convenience, to a contest at chess, for his own pleasure, we have by no means settled the matter. If we admit that his risk in crossing the street was a risk incident to his employment, upon the theory that, for the purpose of crossing and recrossing, the street was a part of the company's lot, we are yet afield. The thoroughfare was certainly not a part of the lot in the sense that Stanley might properly have loitered, or stood in social converse, upon it, as he might very properly have done upon any part of the lot located upon the corners of the intersection. When he stopped in the street he assumed a risk common to all who might sojourn there in the same manner. Under such circumstances his employer is not called upon to make compensation for his injuries. They did not arise out of the employment."

The award is annulled.

Jennings, J., concurred.